J-S38014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NORMAN ROBINSON | |
| Appellant | No. 2064 MDA 2014 |

Appeal from the Judgment of Sentence of November 6, 2014
In the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0002111-2014

BEFORE:  WECHT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 16, 2015**

Norman Robinson appeals the November 6, 2014 judgment of sentence.  Because the trial court abused its discretion by giving an inaccurate jury instruction, we vacate the judgment of sentence and remand for a new trial.

Robinson was charged with, and found guilty of, making a materially false written statement in connection with the purchase of a firearm, 18 Pa.C.S.A. § 6111(g)(4)(ii).  The trial court provided the following summary of the evidence that was developed at trial:

> The Commonwealth presented testimony that showed [that,] back in February of 2013, [Robinson] attempted to purchase a handgun at a gun show held at the York Expo Center in York County, Pennsylvania.  Tyler Brightbill, the Commonwealth's first witness, was operating a booth for Treeline Sports.  . . . Mr. Brightbill explained the general process an individual must go through in order to purchase a gun in the state of Pennsylvania.  He explained that[,] for a long gun[,] an individual must fill out

one form, but for a handgun[,] two forms are required. After the potential buyer fills out the form(s), it is the job of the seller to verify the buyer's identity by comparing the picture on the identification card provided with the person standing in front of him. The seller records all the information from the identification card on the form and then calls an 800 number, which is known as the PICS system. After entering the information into the PCIS system, the seller will then be notified whether the buyer is approved. If the buyer is approved, the seller is given an approval number, which is recorded on the form and the transaction is completed.

With respect to [Robinson], Mr. Brightbill was unable to specifically recall the interaction because of the number of people he dealt with at the York gun show. However, he was shown the forms [that Robinson] filled out that day and he did testify that it was his signature on those forms, which led him to conclude that he was the one dealing with [Robinson] that day. Mr. Brightbill performed all the necessary steps discussed above, but he was informed by the PICS system that [Robinson's] application had been denied. On cross-examination, Mr. Brightbill indicated that he did not remember anything out of the ordinary from the gun show, so he assumed [Robinson] just walked away after being denied.

The Commonwealth's last witness was Detective Jeffrey Snell from the West Manchester Township Police Department. He testified that he was contacted by the Pennsylvania State Police Firearms Division regarding a possible case of deceptive practices with respect to the purchase of a firearm. During his investigation, Detective Snell spoke with Tyler Brightbill, who told him, like he told the jury, he was unable to specifically remember the transaction with [Robinson].

In the process of his investigation, Detective Snell found that [Robinson] was convicted of more than one felony in New Jersey. While reviewing the forms filled out by [Robinson], Detective Snell noticed that [Robinson] checked "no" to questions relating to felony convictions. Because [Robinson] was seeking to purchase a handgun he was required to fill out two forms, which contained a combined three questions regarding felony convictions. Question 11c of the federal form asked, "Have you ever been convicted in any court of a felony and any other crime for which the Judge could have imprisoned you for more than one year, even if you received a shorter

sentence including probation?" Question 31 of the Pennsylvania state form asked, "Have you ever been convicted of a crime enumerated in Section 6105(b), or do any of the following conditions under [Section] 6105(c) apply to you?" Lastly, Question 32 of the state form asked, "Are you now charged with or have you ever been convicted of a crime punishable by imprisonment for a term exceeding one year?" [Robinson] checked "no" to all three questions.

Detective Snell completed his investigation and determined that [Robinson] was being deceptive in his attempts to purchase a firearm because he had been convicted of more than one felony and did not disclose this fact on the application. On cross-examination, Detective Snell stated that he did not interview [Robinson] as part of his investigation. He also testified that [Robinson] did not attempt to purchase a firearm under a fake identity. The Commonwealth rested.

[Robinson] was the only witness for the defense. He explained that back in February of 2013, his son-in-law invited him to the York gun show. [Robinson] decided to go because it sounded fun and he had never attended a gun show before. While there, [Robinson] wanted to see if he would be able to legally obtain a firearm. He pointed to a gun and the seller provided him with two forms to fill out. [Robinson] testified that he filled out the forms to the best of his ability, but he was confused by a few questions; however, he did not ask for clarification. With respect to the questions regarding his prior record[, Robinson] explained that he assumed the questions were related to a prior record in Pennsylvania, not the entire country. Once [Robinson] was informed he was denied[,] he walked away.

On cross-examination, [Robinson] reiterated that he was attempting to "do something legally." When asked if this meant he was aware that it might not be legal for him to have [a] gun, [Robinson] stated he did not think that his record from 19 years ago in New Jersey would "carry over" into Pennsylvania. [Robinson] also admitted that neither form stated that the felony conviction had to occur in Pennsylvania. He again stated that he "didn't think it would be a crime for [him] trying to do something legally." In fact, [Robinson] testified that he did not even have the money to purchase the gun. He indicated that he did not read the certification and warning that stated providing false or misleading information was a crime.

Trial Court Opinion ("T.C.O."), 1/12/2015, at 2-5 (citations to record and footnote omitted).

After deliberations, the jury returned a guilty verdict. On November 6, 2014, Robinson was sentenced to three to seven years' imprisonment. On December 3, 2014, Robinson filed a notice of appeal. On December 5, 2014, the trial court ordered Robinson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Robinson timely complied. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on January 12, 2015.

Robinson raises two issues for our review:

1. Whether the evidence was insufficient to find [Robinson] guilty of violating 18 Pa.C.S.A. § 6111(g)(4) relating to the sale or transfer of firearms, where the evidence failed to establish that [Robinson] knowingly and intentionally made a materially false written statement when he attempted to purchase a firearm?

2. Whether the trial court provided a jury instruction relating to the sale or transfer of firearms, which failed to sufficiently and accurately apprise the jury of the law it must consider in rendering its decision?

Robinson's Brief at 6.

Robinson first challenges the sufficiency of the evidence to sustain his conviction. Our standard of review for such a claim is well-settled:

[O]ur applicable standard of review is "whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the factfinder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt."

- 4 -

> ***Commonwealth v. Eichinger***, 915 A.2d 1122, 1130 (Pa. 2007). Additionally, when examining sufficiency issues, "we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility." ***Commonwealth v. Markman***, 916 A.2d 586, 598 (Pa. 2007).

***Commonwealth v. Crabill***, 926 A.2d 488, 490-91 (Pa. Super. 2007).

Robinson was convicted pursuant to 18 Pa.C.S.A. § 6111(g)(4)(ii), which states as follows:

> Any person, purchaser or transferee commits a felony of the third degree if, in connection with the purchase, delivery or transfer of a firearm under this chapter, he knowingly and intentionally:
>
>          \*    \*    \*
>
> (ii) makes any materially false written statement, including a statement on any form promulgated by Federal or State agencies[.]

18 Pa.C.S.A. § 6111(g)(4).

Specifically, Robinson argues that the evidence was insufficient to demonstrate that he acted knowingly or intentionally. In support of his argument, he cites his testimony that he did not understand or completely read some of the questions, that he believed the forms only sought information about Pennsylvania convictions, and that he did not review the directions on the form. Robinson's Brief at 20-25.

Here, the jury heard Robinson's testimony that he did not read the form or understand that his New Jersey convictions would require him to

answer yes to certain questions. The jury also saw the forms that Robinson filled out. The state form included the following question:

> Are you now charged with, or have you ever been convicted of a crime punishable by imprisonment for a term exceeding one year? This is the maximum sentence that you "could have received," not the actual sentence you did receive. (This does not include federal or state offenses pertaining to antitrust, unfair trade practice, restraints of trade, or regulation of business or state offenses classified as misdemeanors and punishable by a year of imprisonment not to exceed two years) (Read information on back prior to answering).

Pennsylvania State Police Application/Record of Sale, Exh. 2 at 1. The question specifically mentions federal crimes, which contradicts Robinson's claim that he believed only Pennsylvania convictions were reportable.

Further, both forms include verifications that a false statement is punishable as a felony, and the federal form's verification states that a person convicted of a felony is prohibited from purchasing a firearm. Robinson admitted that he filled out the forms and that he signed the verifications. Viewing that evidence in the light most favorable to the Commonwealth, the jury could have concluded that Robinson knew he was ineligible to purchase a firearm and, therefore, that he knowingly provided false information in an attempt to skirt those prohibitions. Because the jury is free to reach its own conclusions about credibility and to believe all, some, or none of Robinson's testimony, the evidence sufficed to prove that Robinson acted knowingly or intentionally.

Next, Robinson challenges the court's jury instructions.

- 6 -

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa. Super. 2008).

Robinson argues that the trial court inserted language into the statute when instructing the jury. At the close of the first day of trial, the court began discussing the jury instructions that it would deliver. Notes of Testimony ("N.T."), 10/6-7/2014, at 100. The Commonwealth suggested that "in connection with" the purchase of a gun should be explained to the jury so they understood that the crime could be committed even though the purchase was not completed. *Id.* Robinson's counsel argued that an actual purchase was required as an element of the crime.[1] *Id.* at 101. The trial judge concluded that the language of the statute was broad enough to include potential purchasers. *Id.* at 103. The Commonwealth proposed a jury instruction that would include the following statement: "The term 'in connection with' includes a completed purchase, delivery, or transfer of a firearm as well as an attempt to purchase, deliver, or transfer a firearm." Commonwealth's Proposed Jury Instruction. Robinson requested that the

---

[1] Robinson also moved for a judgment of acquittal upon that same basis. *Id.* at 101. The motion was denied. *Id.* at 103-04.

court give the standard instruction, which tracked the language of the statute. *Id.* at 105. The trial court took the issue under advisement.

After the close of evidence, the trial court revisited the issue. Again, Robinson's counsel sought the standard instruction. *Id.* at 137. The trial court decided not to give either the standard instruction or the Commonwealth's suggested instruction. Instead, the trial court inserted the words "or attempted to do so" into the standard instruction. The trial court also added a definition of attempt. It then noted both parties' objections for the record. *Id.* at 138. The court ultimately instructed the jury as follows:

> To find [Robinson] guilty of an offense under the Firearms Act, you must find that the following three elements have been proven beyond a reasonable doubt:
>
> First, that [Robinson] purchased, delivered, or transferred a firearm or **attempted to do so**;
>
> Second, that in connection with such purchase, delivery, or transfer, or **attempt to do that**, [Robinson] made a materially false written statement, including a statement on any form promulgated by the federal or state government;
>
> Third, that [Robinson] did so knowingly and intentionally.
>
> A person acts intentionally when it is his or her conscious object or purpose to engage in the conduct prohibited by law. A person acts knowingly when they are aware that their conduct is not in conformity with the law of the Commonwealth. **And with regard to attempt, one attempts to do something when one intends to do a particular act and then takes a substantial step toward accomplishing that act**.

*Id.* at 161-62 (emphasis added). The trial court then repeated the three elements to the jury. *Id.* at 162-63.

Robinson argues that, by not using the standard jury instruction, the trial court provided the jury with an inaccurate statement of the law. Robinson asserts that the jury could have been confused by the insertion of the attempt language. Robison's Brief at 26-28.

The trial court found that the statutory language required a broad reading that included attempt. In explaining its bases for including that language, the trial court highlights the phrase "[a]ny person, purchaser or transferee," and argues that "any person" would be unnecessary surplusage if the legislature only intended to include purchasers and transferees. Thus, the trial court concluded that attempted purchases must be encompassed by the law. T.C.O. at 8-9. The Commonwealth argues that "in connection with the purchase" was broad enough to include attempted purchases and not just completed purchases. N.T. at 100.

To resolve Robinson's challenge, we must examine the statutory language of section 6111(g).[2]

> The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. 1 Pa.C.S.A. § 1921(a); ***Commonwealth v. Drummond***, 775 A.2d 849, 855-56 (Pa. Super. 2001) (*en banc*) (stating that appellate courts must evaluate each section of a statute because there is a

---

[2]     Neither of the two cases cited in the concurring and dissenting memorandum directly addresses the issue that we confront in this case. They hold no value other than to note that other people have been prosecuted for providing false information in connection with an attempted purchase of a firearm.

presumption that the legislature intended for the entire statute to be operative). "In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *In re Jacobs*, 936 A.2d 1156, 1163 (Pa. Super. 2007) (quoting *Commonwealth v. Lopez*, 663 A.2d 746, 748 (Pa. Super. 1995)). When analyzing particular words or phrases, we must construe them "according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a). "Words of a statute are to be considered in their grammatical context." *Drummond*, 775 A.2d at 856 (citation omitted). "Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute." *Id.* (citation omitted); *see also Jacobs*, 936 A.2d at 1163 (stating that "[t]his Court does not have the authority to insert a word or additional requirement into a statutory provision where the legislature has failed to supply it"). A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word. *Commonwealth v. Ostrosky*, 909 A.2d 1224, 1232 (Pa. 2006).

*Commonwealth v. Morris*, 958 A.2d 569, 578-79 (Pa. Super. 2008) (citations modified); *see Key Sav. & Loan Ass'n v. Louis John, Inc.*, 549 A.2d 988, 991 (Pa. Super. 1988) ("[The court] is without authority to insert a word into a statutory provision where the legislature has failed to supply it.").

The Commonwealth and Robinson offer reasonable interpretations of the phrase "in connection with the purchase" of a gun. Thus, we have no difficulty concluding that the term "in connection with the purchase" is ambiguous. The trial court, attempting to given meaning to every word of the statute, focused upon the phrase "any person, purchaser or transferee," in defining the phrase to avoid rendering any of the statute's language as

- 10 -

mere surplusage. It is also fair to say that it would be an absurd result to conclude that the General Assembly meant to criminalize the false written statement on an application for a gun when the purchase was completed, but not when the background check system caught the falsehood before the purchase concluded. *See Commonwealth v. Hooks*, 921 A.2d 1199, 1205 (Pa. Super. 2007) ("General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."); 1 Pa.C.S.A. § 1922.

However, we must weigh these considerations of statutory interpretation against the rule of lenity.

> [P]enal statutes are to be strictly construed. *See* 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. Wooten,* 545 A.2d 876, 879 (Pa. 1988). The need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded, *see Wooten,* 545 A.2d at 880; *Commonwealth v. Gordon*, 515 A.2d 558, 561 (Pa. 1986); *Commonwealth v. Duncan*, 321 A.2d 917, 919 (Pa. 1974), nor does it override the more general principle that the words of a statute must be construed according to their common and approved usage, *see* 1 Pa.C.S. § 1903(a). It does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. *See Wooten,* 545 A.2d at 879. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt. *See Commonwealth v. Allsup,* 392 A.2d 1309, 1311 (Pa. 1978); *see also Rewis v. United States,* 401 U.S. 808, 812, 9 (1971) (observing that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity"). Significantly, a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope.

*Commonwealth v. Booth*, 766 A.2d 843, 846 (Pa. 2001) (some citations and footnote omitted; some citations modified).

Keeping these principles in mind, we must resolve the ambiguities in the statute in favor of Robinson. Here, Robinson was not charged with a criminal attempt. *See* 18 Pa.C.S.A. § 901. Instead, the trial court construed the statute broadly to include attempted purchase within its language. In doing so, the trial court added terms to the statute that broadened its scope relative to more narrow available interpretations, which it had no authority to do. *See Booth*, *supra*. Because the trial court failed to resolve the ambiguity in the statute in favor of Robinson and inserted words into the statute, the jury instruction did not convey an accurate statement of the law. Instead, the court broadened the statute, which increased the likelihood that Robinson would be convicted by the jury. Moreover, the jury deliberated about and convicted Robinson of a crime that was incorrectly defined. No such conviction can stand, and no error that produces such a conviction is harmless. Thus, we must vacate Robinson's judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Remand for new trial. Jurisdiction relinquished.

Judge Musmanno joins the memorandum.

Judge Stabile files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2015